**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEAST DIVISION**

FILED

JUL 2 2 2011

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

| | | |
|---|---|---|
| **RUTH PIERCE by** | ) | |
| **Tammy Clowers** | ) | |
| **Guardian and Conservator,** | ) | **Civil Action No:** |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **1: 11 CV 0 0 1 3 2 SNLJ** |
| | ) | |
| **Pemiscot Memorial Health** | ) | |
| **Systems, Bonnie Moore,** | ) | |
| **Dr. James Pang, Affinity** | ) | |
| **Healthcare, Inc., Benton** | ) | |
| **'Ben' Bloom,** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |

COMPLAINT

1.

This action is brought pursuant to 42 U.S.C. §1983 for declaratory relief and monetary damages arising from the actions of Defendants in unlawfully holding Plaintiff against her will in a psychiatric unit of a hospital for more than two months, in violation of the Fourteenth Amendment to the Constitution of the United States, Article I, Section 10 to the Constitution of the State of Missouri; and State and Federal laws for protection of patients.

JURISDICTION

2.

The jurisdiction is invoked pursuant to 28 U.S.C. §1331 and §1343 (3) and (4).

PARTIES

3.

Ruth Pierce is an adult resident of Pemiscot County, Missouri. The present action is brought by her guardian and conservator Tammy Clowers.

4.

Defendant Pemiscot Memorial Health Systems, herein after referred to PMHS, is a public county hospital located in Hayti, Pemiscot County, Missouri. It operates an inpatient mental health and psychiatric facility known as "Resolutions". It participates in Medicare and Medicaid programs. Service may be made upon Defendant by serving Kerry Noble, its Administrator & Chief Executive Office of PMHS at 946 E. Reed St., Hayti, Missouri.

5.

On information and belief, Defendant Affinity Healthcare, Inc. is a corporation incorporated under the laws of the State of Missouri. Its president and owner is Benton (Ben) Bloom. Service of process may be made by serving its registered agent Donald Wieland, 2139 E. Primrose, Suite E., Springfield, Missouri.

2

6.

At all times materials to this action, Defendant Benton Bloom was a licensed psychologist in Missouri, License No. 00936 and was sole owner and president of Affinity Healthcare. He may be served at the corporate office for the corporation: 1031 E. Battlefield, Springfield, Missouri.

7.

At all times material to this action, Defendant Bonnie Moore is a registered nurse and Director of Behavioral Health for Resolutions. She may be served with process at the Resolutions unit, 946 E. Reed St., Hayti, Missouri.

8.

At all times materials to this action, Defendant Dr. Jim Pang, Jr. was a psychiatrist and licensed medical doctor in the State of Missouri, License No. 200603157 and was the physician for Ruth Pierce during her stay at the Resolutions unit at PMHS. He may be served with process at Pemiscot Memorial Health Systems, 946 E. Reed St., Hayti, Missouri.

9.

At all times materials to this action, Defendants, their agents and employees acted under colors of law, custom and usage of the State of Missouri.

10.

The individual Defendants named in the present action were officers, agents

3

and employees of PMHS and/or Affinity Healthcare, Inc. which are liable to Plaintiff based on the doctrine of *respondeat superior*.

## FACTS

### 11.

On Friday May 15, 2009, the Circuit Court of Pemiscot County issued an Order for 96 Hour Detention, Evaluation and Treatment for Ruth Pierce placing her in Resolutions psychiatric unit at PMHS

### 12.

Plaintiff was taken to Resolution and admitted to the psychiatric unit on or about May 16, 2009.

### 13.

The psychiatric unit at Resolutions is a psychiatric inpatient facility. It is a lock-down secure facility in which patients are confined and not allowed to leave the facility prior to discharge.

### 14.

Following her admission to Resolutions, Plaintiff was not informed her rights as required by Section 632.320 and 632.25 R.S.M.O. including not being advised of her right to be released upon the expiration of the 96 hour order for detention and of her right to an attorney, or offered the opportunity and the assistance to contact an attorney.

4

15.

Missouri law and the Court's order limited detention of Ruth Pierce to 96 hours unless a petition for a further period of detention and treatment was filed with the court.

16.

No further petition for detention or treatment was filed with the court by Resolutions or anyone else as is required by Section 632.105 *et. seq*.

17.

Plaintiff was held against her will from May 21-July 22, 2009 despite repeated requests to go home, several of which are noted in Resolutions' medical record.

18.

Defendants conspired to deny Plaintiff her rights under the law by keeping her in a lock-down facility, denying her the right to an attorney, forcing her to take psychiatric medications against her will and other medications unsupported by laboratory tests.

19.

Plaintiff Ruth Pierce on and after May 21, 2009 repeatedly told the staff at Resolutions that she was not supposed to be there and wanted to go home but she was never allowed to do so. Defendants further participated in a scheme to cover up their violations of Plaintiff's rights. Defendants in the furtherance of the conspiracy by

5

coercion, trickery and deceit obtained Plaintiff's signature on a voluntary admission

form with the space for the date left blank and thereafter   back-dated the document

to May 21, 2009 to appear that it had been signed by the patient on the day her 96

hour commitment expired rather than two months later on July 15, 2009. See Exhibit

"A" attached hereto).

### 20.

The voluntary admission form was obtained through the knowledge and

complicity of Benton Bloom the president of Affinity Healthcare, Inc., Bonnie Moore

the Director of Resolutions, the treating psychiatrist Jim Pang, and Resolutions staff.

Defendant Pang at a Treatment Team meeting suggested tricking Plaintiff into signing

an admission form and thereafter informed Plaintiff that she would be going home on

July 15, 2009. On that date Resolutions and its staff prepared a voluntary admission

form and through fraud and misrepresentation told Plaintiff that she was signing a

release to go home. Later that day Plaintiff asked about going home and was told that

she could not leave the facility because Defendant Pang had not authorized her

release; she was also informed that what she had signed was a voluntary admission

form. (See Exhibit "B" attached copy of nurses notes for July 15, 2009.) The nurses

notes show that on July 19, 2009 she again asked to go home but was not allowed to

do so nor was she allowed to contact an attorney.

21.

On information and belief, PMHS at all times material to this action had a contract with Affinity Healthcare, Inc. to manage, supervise, and operate its Resolutions psychiatric unit. In addition, Affinity Healthcare, Inc. was responsible for marketing to increase Resolutions' patient census and revenue.

22.

At all times material to this action, Defendant Benton "Ben" Bloom, owned and was president of Affinity Healthcare, Inc., and throughout 2009, he was personally in charge of and responsible for management, supervision and operation of Resolutions, including monitoring and review of services to patients, compliance with State and Federal program regulations, staffing, and supervision of personnel.

23.

Defendant Bloom was personally aware of the illegal action taken by Defendants, their agents and employees against Ruth Pierce but failed to take any action to secure her discharge and return her to her home but conspired with Defendants to conceal the violations of her rights.

24.

Benton Bloom engaged in discussion with Bonnie Moore and agents and employees of PMHS regarding the circumstances concerning Ruth Pierce's detention following the expiration of the 96 hour commitment.

7

25.

Defendant Bonnie Moore was the Director of Resolutions, and was aware of the

court ordered commitment and the requirements of the law for holding Plaintiff

beyond the 96 hour period detention, evaluation, and treatment. In addition she was

frequently present during the weekly Treatment Team meetings and was responsible

for informing Plaintiff of her rights and authorizing her release. Defendant Moore

further conspired with the other Defendants, their agents and employees regarding

the ongoing detention of Plaintiff and the efforts to cover-up the illegality of

Defendants' acts. Defendant Moore knew of the illegality of detaining Plaintiff

without first filing a petition with the court for an order for additional inpatient

detention and treatment pursuant to §632.330 R.S.Mo. Nevertheless she willfully,

intentionally, and in utter disregard of Plaintiff's legal and human rights refused allow

her to leave Resolutions.

26.

The actions of Defendants violated Plaintiff's rights under the Patient's Bill

of Rights, Chapter 632 R.S.Mo., and her right to be discharged upon request, to

informed consent and to refuse medication without force or coercion.

27.

The actions and inactions of Defendants, their agents and employees were in

direct violation of Plaintiff's rights to liberty and freedom from restraint, to be

released from detention, and to live in her own home. The actions of Defendants in incarcerating her against her will at Resolutions were knowingly taken, without legal authority and in direct violation of Section 632.360 R.S.Mo which expressly provides:

> At the end of any detention period ordered of the court under this chapter, the respondent shall be discharged unless a petition for further detention is filed and heard in the same manner as provided herein.

Also see: Section 632.320, 632.325, and 632.330(1). The action of Defendants, their agents and employees were intentionally taken and not taken in good faith.

28.

Defendants further denied Plaintiff her right to counsel to challenge her detention. It was only through an employee of Resolutions that Plaintiff was secretly allowed access to a telephone and provided assistance in contacting her attorney who secured her release from the unlawful imprisonment on July 22, 2009.

29.

Defendants, their agents, employees, and representatives reviewed Ruth Pierce's file on a weekly basis with Treatment team members which included Defendant Pang, Resolutions staff and Director Bonnie Moore.

30.

Each week beginning with May 20, 2009 (the day before the expiration of the 96 hour court order), Defendant Pang and team members reviewed Plaintiff's

treatment and certified her as requiring one week's further treatment at Resolutions. These one week treatment plans continued from May 20, 2009 through July 22, 2009. The detention and treatment plans were signed by participating team members. Although the treatment plans were to be discussed with Plaintiff, none of them were presented to Plaintiff, discussed with her, or signed by her in the space for her signature.

31.

On July 22, 2009, Plaintiff's attorney came to Resolutions and demanded her release. At that time, Plaintiff confirmed to the Director of Resolutions, Bonnie Moore, her desire to leave and return to her home. Bonnie Moore stated that Plaintiff could not be released without being discharged by Dr. Pang. She then called Dr. Pang by telephone and informed him that Mrs. Pierce's attorney was present and obtained his verbal consent to release Plaintiff.

32.

Defendants' actions and those of their agents and employees in illegally holding 84 year old Ruth Pierce against her will not only denied her access to an attorney and due process of law, but exposed her to a significant, foreseeable, and unreasonable risk of harm and emotional distress.

33.

Defendants PMHS has obtained payment from the United States by illegally

10

billing Medicare $94,540.00 for illegally detaining Plaintiff. In addition PMHS has billed Plaintiff for the cost of her confinement.

34.

The actions of Defendants violate the criminal laws of the State of Missouri and the United States.

## COUNT I.

35.

Plaintiff realleges the allegations contained in paragraphs 1-34 above.

36.

Defendants, their agents and employees by their concerted actions have deprived Plaintiff of her rights to liberty, freedom from restraint, and procedural and substantive due process under the Fourteenth Amendment to the Constitution of the United States. Defendants' actions and those of their agents and employees were outrageous, malicious and showed a reckless indifference to the right's of Plaintiff.

37.

As a direct and proximate result of the actions and inactions of Defendants, their agents and employees, Plaintiff has sustained damages, including financial loss, charges for medical services, emotional distress and suffering, humiliation and embarrassment, and injury and relocation stress from prolonged detention.

11

## COUNT II.

### 38.

Plaintiff realleges the allegations contained in Paragraphs 1-34 above.

### 39.

Defendants by their actions and conduct have deprived Plaintiff of her rights under the Federal Patient's Bill of Rights, Article I, Section 10 of the Constitution of the State of Missouri, and §632.105, §631.150, §632.300, §§632.315 - 632.335 R.S.Mo. Defendants' actions and those of their agents and employees were outrageous, malicious and showed a reckless indifference to the right's of Plaintiff.

### 40.

As a direct and proximate result of the actions and conduct of Defendants, their agents and employees, Plaintiff has suffered financial loss, medical and health care charges and expenses, emotional distress, humiliation and embarrassment, relocation stress, loss enjoyment of life, theft of property and burglary of her home while she was being illegally detained by Defendants at Resolutions.

## COUNT III.

### 41.

Plaintiff realleges the allegations contained in Paragraphs 1-34 above.

### 42.

Plaintiff Ruth Pierce was imprisoned by Defendants from May 21, 2009 until

12

her attorney obtained her release on July 22, 2009.

43.

Plaintiff Ruth Pierce alleges that her imprisonment and confinement in the psychiatric unit at Resolutions following expiration 96 hour court ordered detention for evaluation and treatment was illegal, deprived of her of her freedom and liberty, without just cause or excuse. Defendants' actions and those of their agents and employees were outrageous, malicious and showed a reckless indifference to the right's of Plaintiff.

44.

As a direct and proximate result of the actions and conduct of Defendants, their agents and employees, Plaintiff has suffered financial loss, medical and health care charges and expenses, emotional distress, humiliation and embarrassment, relocation stress syndrome, loss of security and enjoyment of life, and theft of property and burglary of her home while she was being detained by Defendants at Resolutions.

## COUNT IV.

45.

Plaintiff realleges the allegations contained in paragraphs 1-34 above.

46.

Defendants actions and those of their agents and employees acting in the furtherance of the conspiracy through force and coercion forced Plaintiff to take

13

medicine over her repeated objections and refusals. Defendants' actions and those of their agents and employees were outrageous, malicious and showed a reckless indifference to the right's of Plaintiff.

47.

Defendants, their agents and employees through trickery substituted a different medication for one of the medications she repeatedly objected so she would not be able to distinguish what she was forced to take.

48.

Defendant, including their agents and employees, did not obtain Plaintiff's informed consent to the medications was forced to take.

49.

Defendants forced administration of medications and psycho tropic drugs without her consent constituted assault and battery.

50.

As a direct and proximate result of the actions and conduct of Defendants, their agents and employees, Plaintiff was drugged, suffered emotional distress, humiliation and embarrassment, unwanted physical contact, physical injury, and loss of a sense of control over her life.

14

## COUNT V.

### 51.

Plaintiff realleges the allegations contained in paragraphs 1-34 above.

### 52.

Defendants' actions and those of their agent and employees detaining Plaintiff upon the expiration of the 96 hour commitment and continuing thereafter to detain her was without legal justification and constituted the intentional infliction of emotional distress and suffering. Defendants' actions and those of their agents and employees were outrageous, malicious and showed a reckless indifference to the right's of Plaintiff.

### 53.

Such conduct together with Defendants' ongoing indifference to Plaintiff 's repeated pleas to go home and schemes to keep her in Resolutions against her will were extreme, outrageous, fraudulent, and utterly intolerable in a civilized and law-abiding society and showed a reckless disregard of Plaintiff's legal rights.

### 54.

, The conduct of Defendants posed a foreseeable and high risk of emotional distress, fear, isolation, helplessness, and anxiety in an elderly lady who has lost her husband just a year before.

15

55.

As a direct and proximate result of Defendants' actions and conduct and that of their employees, Plaintiff suffered physical injury and medically diagnosable emotional distress of sufficient severity as to be medically significant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ruth Pierce prays this court to enter judgment on her behalf against Defendants as follows:

1.     Award Plaintiff a reasonable attorney fee, together with expenses and costs of litigation pursuant to 42 U.S.C. §1988;

2.     Enter a monetary judgment under Count I against Defendants, jointly and severally, in the amount of $1,000,000 as compensatory damages and $1,000,000 in exemplary or punitive damages;

3.     Enter judgment for declaratory relief and monetary damages under Count II against Defendants, jointly and severally, in the amount of $1,000,000 as compensatory damages and $1,000,000 as exemplary or punitive damages;

4.     Enter a monetary judgment under Count III against Defendants, jointly and severally, in the amount of $2,000,000 as compensatory damages and $2,000,000 in exemplary or punitive damages;

5.     Enter a monetary judgment under Count IV against Defendants, jointly and severally, in the amount of $1,000,000 as compensatory damages and $1,000,000

in exemplary or punitive damages;

6.     Enter a monetary judgment under Count IV against Defendants, jointly

and severally, in the amount of $1,000,000 as compensatory damages and $1,000,000

in exemplary or punitive damages; and

7.     Grant Plaintiff such other and further relief as is just and proper.


                                   s/ Jim R. Bruce
                                   Jim R. Bruce,          #29,673
                                   P.O. Box 37
                                   Kennett, MO 63857
                                   Telephone: (573) 888-9696

                                   ATTORNEY FOR PLAINTIFF