UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

| | | |
|---|---|---|
| **RUTH PIERCE by** | ) | |
| **Shirley Dodd** | ) | |
| **Guardian and  Conservator,** | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | Civil Action No:  1:11CV00132CEJ |
| | ) | |
| **Pemiscot Memorial Health** | ) | |
| **Systems, et al.** | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS

Defendants have filed five separate motions for summary judgment and one motion to dismiss with accompanying separate brief.  Defendant Pang has filed two motions for summary judgment and Defendant Moore a motion for summary judgment and a motion to dismiss.  Plaintiff will attempt to respond to Defendants asserted facts and legal argument in a single brief.

Most of Defendants arguments rely on the same legal analysis.  They assert they are immune to suit under §537.120 R.S.Mo. or in the alternative that they are protected by qualified immunity under federal case authority.  They further assert that Plaintiff's claim of constitutional and statutory violations under federal and state law are actually state law claims for malpractice for which Plaintiff was required to file

1

a health care affidavit under §538.225, and that PMHS as the owner and operator of its Resolutions psychiatric unit is immune to damages despite that it has agreed by contract to indemnify Affinity for any damages against it whether they result from the actions of Affinity or the hospital itself.

## I. OFFICIAL IMMUNITY DEFENSE

Defendants Moore, Bloom, and Affinity assert that they are entitled to immunity based on the fact that they were "acting in joint participation with public officials" (Bloom/Affinity Memorandum, p. 12; Moore Memorandum, p. 15), and therefore are immune to damages in a §1983 action. They have identified no other public officials and apparently are referring to joint participation with PMHS which is the only governmental or "official" entity available. They assert the defense "extends to private practices who act in joint participation with public officials." They contend that although they are not public entities or officials themselves, they were responsible for the management and operation of PMHS Resolutions psychiatric unit under contract with the hospital. The case authority they cite (Bloom/Affinity Memorandums, p. 12) pre-dates the Supreme Court's decision in *Richards v. McKnight*, 521 U.S. 399, 138 L.Ed. 2d 540, 117 S.Ct. 2100 (1997). In that case, two prison guards who by the use of physical restraints caused injuries to the plaintiff requiring hospitalization. The guards were employees of a private prison

management company which had contracted with the state to manage a correctional facility. The court declined to extend qualified immunity to employees or officers of a private company operating under a contract with a governmental entity. The context there, as in the matter *sub judice*, was one in which "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." Here the initial contract was for three years with automatic one year extensions thereafter. The contract has now been in effect almost five years and was designed to provide a turn-key management and supervision for a psychiatric unit which included more than half of the hospital operations.

In *Weigland v. Spadt*, 314 F.Supp. 1129 (D. Neb. 2004), the district court denied a qualified immunity in a First Amendment and Title VII action against the director to an emergency medical service provider that had contracted to provide that service for a city. Also see: *Weiler v. Purkett*, 137 F.3d. 1047, *En Banc* (8th Cir. 1998).

Defendants contend that they have a qualified official immunity to damages based on Affinity's contract with the hospital and their close relation to both. In this respect they argue that Plaintiff's federal and constitutional rights to substantive and

3

procedural due process under the Fourteenth Amendment and the safeguards of Chapter 632 R.S.Mo. are not mandatory but discretionary and that they are free to follow or completely ignore them as they choose. They likewise advance their argument that the constitutional and statutory claims are not "clearly established" such that a reasonable person responsible for administration of mental health programs and involuntary commitments would not understand their actions to be unlawful. They assert that they had reasonable beliefs that they could detain Plaintiff indefinitely so long as they believed she should not be allowed to return to her home or be discharged absent a safe discharge plan, which for them meant placing her in a nursing home against her will. They have relied in part on an affidavit of Dr. Lake, a hired expert who asserts without basis, that it was reasonable for Defendants to hold Plaintiff for 61 days after the expiration of her 96 hour commitment if they believed her not to be ready for discharge. Dr. Lake's affidavit was not based on personal knowledge of Plaintiff and he never spoke with her or performed an evaluation for her at the end of the 96 hours. His testimony relies on misinformation, hearsay and false statements obtained from other sources where reliability were not subject to scrutiny in a judicial. As such his affidavit is erroneous and that of a partisan in contested litigation. His determination three years later is improper and rely on disputed facts subsequent to Plaintiff's detention. Morever, reliance by Defendants

4

on an unreasonable belief plainly contrary to established law and statues fails to furnish a basis for qualified immunity or good faith in their joint decision and unlawful detention.

## II. OTHER IMMUNITY DEFENSE

Defendants also attempt to raise good faith immunity defense under Section 632.440 and 537.120 R.S.Mo. Preliminarily it should be noted that Plaintiff's §1983 claims are restricted in time and subject matter. Her claims for unlawful detention and substantive and procedural due process involve failing to inform her of her rights under state law and denying her of the opportunity to challenge the unlawful action of defendants. The detention beyond 96 hours is the result of the failure to recognize her Fourteenth Amendment right and afford access to a judicial forum. Prior to the expiration of the 96 hours there was little basis for challenging detention. The court order clearly gave defendants custody and power to control Plaintiff's life for 96 hours. It clearly showed that it was only effective for 96 hours and that without further compliance with chapter 632, Plaintiff was to be discharged. Any assertion that Defendants reasonably believe they could keep Mrs. Pierce beyond that time is frivolous, plainly contradicted plain language of the order and, lacking in good faith.

In same vein, Defendants claim that §632.440 provides that no health care professional

> ". . . should be liable civilly for detaining, transporting, conditionally releasing, or discharging a person pursuant to this chapter. . . at or *before the end of the period for which the person was committed or detained* for evaluation or treatment so long as such duties were performed in good faith and without gross negligence."

With respect to Defendants' detention of Plaintiff *after* the 96 hours, the statute provides no cover for Defendants' actions since it clearly excludes detention subsequent to the expiration of 96 hours.

Defendants claim that §537.120 applies to present recovery of damages against them for Mrs. Pierce's statutory and due process claims under the Fourteenth Amendment. Significantly, the statute only applies to a regularly practicing or licensed physician or surgeon or the owner or operator of "*any private sanatorium or hospital*" who are granted immunity from damages for the restraint of any mentally incapacitated person for furnishing care, treatment or attention to such person while such person is confined in such sanatorium or hospital under the care of the physician or surgeon.

Two items are of particular significance. First, the sanatorium or hospital must be privately owned and operated as opposed to public entities. Second, the statue plainly pertains to damages for injuries which result from physical restraint of a patient as opposed to detention under §632.440 which provides a parallel protection in the proper case for commitments.

6

Defendants Moore, Bloom and Affinity misrepresent the facts in an effort to bring themselves within the statute. The entire case centers around the relationship between PMHS to convert part of its hospital into a psychiatric unit under its ownership and control. To this end it contracted Affinity, and through it with Bloom, Moore and Pang to set up and manage its Resolutions psychiatric unit. Defendant Bloom and Affinity assert that Resolutions is a "private" sanatorium or hospital because it is operated by Affinity Healthcare, and Bloom is the owner. First, the owner and operator is PMHS. Affinity merely manages, staffs, and supervises Resolutions. Affinity is neither operator or the owner of Resolutions. Moreover, even were that the case, Bloom is not the owner and operator of Resolutions simply because he owns the corporation. Nor does the statue afford protection to Affinity. Defendant Moore likewise asserts in her statement of uncontroverted facts that Resolutions is "*privately owned* by Affinity Healthcare, a corporation." It is indisputable that Affinity has no ownership interest in Resolutions whatsoever. (See Affidavit of Jack Pennington, ¶5, Exhibit A to PMHS Motion for Summary Judgment, Document 98-2).

<h3 style="text-align:center">III. NO EXPERT AFFIDAVIT REQUIRED</h3>

Defendants have launched an attack on all fronts asserting that Plaintiff's case is essentially a professional negligence case, and Plaintiff cannot clearly establish her

constitutional and statutory claims under §1983 without producing affidavits from medical professionals for each defendant certify that the actions they took failed to meet the requisite standard of care for a medical malpractice action. They rely on §538.225 and case authority that mere difference of opinion as to medical treatment constitutes professional malpractice cause of action for which an affidavit must be filed with a court.

They point to cases which assert that the decision regarding treatment of a patient, unlawful death caused by a physician, intentional infliction of emotional distress, assault and battery, breach of a fiduciary duty in the treatment of a patient were based on the facts of the case. The Missouri Supreme Court in *DeVitre v. Orthopaedic Center*, 349 S.W. 2d 329 (Mo. *En Banc* 2011) the court held that suits against health care providers and hospitals, the court's duty was to determine "whether the relationship of the parties is that of health care provider and recipient" and if so whether the "true claim" asserted by the Plaintiff relates "only to the provision of health care services."

In *DeVitre*, the court noted various cases in which Missouri courts based on the particular facts that actions were in effect one for malpractice as opposed to some other tort. The court in the discussion of the plaintiff's claims for assault stated: "Expert testimony is not required for a battery based on lack on consent." (at p. 334).

8

The court reasoned that battery occurs when a physician performs a medical procedure without valid consent. All a patient is required to do is prove that an unconsented touching occurred.

In the present case, Plaintiff could not challenge the detention where her consent had been given for her by a court order limited her to 96 hours. At the end of the detention period the judicial consent was withdrawn. On expiration of the court order, Mrs. Pierce did not consent to remain at Resolutions nor had Defendants sought an additional period of detention. What is clear is that she wanted to go home and repeatedly express that desire as well as her objection to taking medication which continued to be administered thereafter without her consent. After the 96 hours, the court ordered relationship between Plaintiff and Defendants ended. Defendants continued detention without her consent was outside the relationship between a health care provider and patient such that §538.225 does not apply. Likewise, Defendants failed to establish that the second prong of the test articulated in *DeVitre* applies. In this case, the claims do not related to medical treatment during Mrs. Pierce's initial detention but are for actions subsequent the time she should have been discharged in accordance with Chapter 632. After that time, her detention was against her will and her desire to go home. Defendants continued detention and coercion in taking medication, which she stated she did not need, were unauthorized and in violation of

9

the statutes establishing rights and protections for involuntary commitments. Not only did they constitute constitutional deprivations under §1983, but constituted false imprisonment and battery.

In *St. John's v. Regional Health Center*, 847 S.W. 2d 168 (Mo. App. S.D. 1993), the plaintiff had been taken into custody under the authorization of a mental health coordinator pursuant to 632.305(3) and 632.310 and transported to a psychiatric hospital for an initial period of evaluation and treatment. Section 362.305(3) allows a mental health coordinator to detain an individual for 96 hours, but only where the patient is suffering from mental illness and poses the likelihood of serious harm to himself or others unless immediately taken into custody. (See p. 169, fn.3). The court further noted that she had been transported to St. Johns on November 14, 1991 and not allowed to leave pending examination and possible treatment. The plaintiff alleged that she was examined by a physician who determined that she had not been suicidal and that further detention would be more harmful than useful and thereupon discharged (fn. 4) on November 16th. The facts in the case are incomplete and unclear as to the precise bases for the false imprisonment claim. If indeed, as it appears from the court's notes, she was detained by a mental health coordinator under Section 632.305(3), the detention was good for 96 hours unless sooner released by the physician or hospital. That appears to have been the

10

case there.  What appears to have been the basis for her suit was that reason  for the initial detention was at odds with that of the psychiatrist who evaluated her.  In that respect she would have been challenging the commitment decisions as without a factual basis.  That would plainly be within the prohibition of Section 538.228 and have required an affidavit.  Such is not the case here.

Consequently, Plaintiff's case involves federal and state claims of constitutional dimension and do not require expert testimony or filing an affidavit. Plaintiff has set forth her factual discussion and legal analysis of the issues in her memorandum in support of her cross-motion for summary judgment which not only clearly establishes the illegality of Defendants' consent in their joint participation of agreement to detain Plaintiff beyond the expiration of her court ordered detention.

Moreover, the joint action by Defendants and violation of clearly established law reflects a decision to deny Plaintiff of her rights such that it constituted a deliberate indifference to Plaintiff rights, opening the door for punitive damages against Defendants Moore, Pang, Bloom and Affinity Healthcare, Inc.

## CONCLUSION

For the foregoing reasons, Plaintiff submits that Defendants motion to dismiss and for summary judgment be denied and that the court enter partial summary judgment on her behalf on Counts I and II.

Respectfully submitted,

s/Jim R. Bruce
Jim R. Bruce, #29,673
 Attorney for Plaintiff
P.O. Box 37
Kennett, Missouri 63857
Telephone: (573) 888-9696

12

# **CERTIFICATE OF SERVICE**

I, Jim R. Bruce, attorney for Plaintiff, hereby certify that I electronically filed the foregoing Plaintiff's Response to Defendants Motions for Summary Judgment with the Clerk of the Court using the CM/ECF system which sends notification of such filing to:

John Grimm, Esq.
The Limbaugh Firm
497 N. Kingshighway, Suite 400
P.O. Box 1150
Cape Girardeau, MO 63702-1150

W. Edward Reeves, Esq.
Ward & Reeves, Attorneys at Law
711 Ward Ave.
P.O. Box 169
Caruthersville, MO 63830

Scott R. Pool, Esq.
Gibbs, Pool & Turner
3225 Emerald Lane, Suite A
Jefferson City, MO 65109-6864

Ted Osburn, Esq.
Osburn, Hine, Yates & Murphy, L.L.C
3071 Lexington Ave
Cape Girardeau, MO 63701

Paul McNeill, Esq,
Womack, Landis, Phelp & McNeill, P.A.
P.O. Box 3077
Jonesboro, AR 72403-3077

This the 23rd day of December, 2013.

                                                         s/Jim R. Bruce