RUTH PIERCE,                              )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )       Case No. 1:11-CV-132 (CEJ)
                                          )
PEMISCOT MEMORIAL HEALTH                  )
SYSTEMS, et al.,                          )
                                          )
            Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on the separate motions of defendants James Pang, M.D., and Bonnie Moore, R.N., for summary judgment, the motion of plaintiff Ruth Pierce for partial summary judgment, defendant Moore's motion to dismiss for failure to file a health care affidavit, and the defendants' joint motions to strike plaintiff's statement of fact and to strike plaintiff's reply.[1]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, asserting claims that defendants Pang and Moore improperly detained her in an inpatient psychiatric unit[2] following the expiration of a 96-hour detention order. She alleges that her continued detention violated her due process rights under the United States and Missouri Constitutions and violated the provisions of Chapter 632, Mo.Rev.Stat., governing involuntary commitment procedures. She also asserts state law claims for false imprisonment, assault and battery in the form of forced medication, and intentional

---

[1]Plaintiff's claims against defendants Pemiscot Memorial Health Systems, Affinity Healthcare, Inc., and Benton Bloom were dismissed by stipulation pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii).

[2]The inpatient unit is known as "Resolutions." Defendant Pang is the medical director and defendant Moore is the program director. Pang Aff. at ¶5, Def. Pang Ex. A [Doc. #94-1]; Moore Ans. to Inter. at ¶2, Def. Moore Ex. J [Doc. #100-10].

infliction of emotional distress.  She seeks compensatory and punitive damages and a declaration that defendants violated her due process rights.

## I.    Background

At the time of the events giving rise to this lawsuit, plaintiff was an 84-year-old widow living alone in Steele, Missouri.  On May 15, 2009, an application for detention was filed with the Pemiscot County Circuit Court based on allegations that she had displayed mental instability and threatened bodily harm to others.  Order, Pl. Ex. O [Doc. #133-14].  The court issued an order of detention, evaluation and treatment at Resolutions, an inpatient psychiatric unit based at Pemiscot Memorial Hospital.  The order stated that the period of detention was "not to exceed 96 hours <u>unless a petition for a further period of detention and treatment is filed with the court</u> of competent jurisdiction."  <u>Id.</u> (emphasis added).  Plaintiff was admitted to Resolutions on May 16, 2009.  Med. Rec. at Pierce 0308, Pl. Ex. A [Doc. #136-4].  She was not discharged until July 22, 2009.  It is undisputed that no petition was filed for a further period of detention beyond the initial 96 hours.

Stacy Jeffers completed the initial paperwork at plaintiff's admission on May 16th.  Jeffers Dep. at p.21, Def. Moore Ex. N [Doc. #100-14].  She testified that she placed an unsigned voluntary admission form on the top of plaintiff's medical chart, with the date May 21, 2009 filled in next to the blank signature line.  She stated that the dated form was meant to serve as a "flag" that plaintiff's 96-hour detention expired on May 21st, and that her signature on the voluntary admission form had to be obtained on that date.  In actuality, however, plaintiff did not sign the form until July 15, 2009.  <u>See</u> Pl. Ex. A, Pierce 0508 [Doc. #136-5].  On that date, Jeffers and Randy DeProw took the form to plaintiff for her signature.  Jeffers testified that they crossed

out the May 21st date and wrote in "July 15, 2009." Plaintiff signed the form and Jeffers and DeProw signed as witnesses.

The Nurses' Notes for July 15, 2009, include an entry at 10:55 that states: "Pt awake in room states 'That doctor told me I was getting to go home today.' ~~Voluntary admission paperwork obtained per S. Jeffers~~." Pl. Ex. A, Pierce 0236 [Doc. #136-3]. The notation "err" is made immediately above this entry. The nurse who made the notation, Zanetta Dillard Johnson, testified that she recognized her handwriting but could not recall why she struck out the entry. Johnson Dep. at p.10, Def. Moore Ex. Q [Doc. #100-17]. The entry made at 2:00 p.m. states that plaintiff requested a bag to pack her clothes. Nurse Johnson reviewed the chart and did not find an order for discharge and noted "need Dr. Pang called." Id. at pp.39-40. At 2:15, she noted, "Spoke with Dr. Pang per G. Hosford RN, no orders received." Pl. Ex. A, Pierce 0236. She testified that Nurse Hosford spoke with Dr. Pang who declined to issue an order discharging plaintiff. It was Nurse Johnson's understanding that a patient could not be discharged without Pang's authorization.

Teresa Van Sickle, LPN, worked the overnight shift at Resolutions. Van Sickle Dep. at p.6, Def. Moore Ex. O [Doc. #100-15]. Van Sickle testified that she knew "fairly early" in plaintiff's admission that she had been involuntarily committed and did not want to be at Resolutions. Id. at p.10. On July 15, 2009, at 8:30 p.m., Van Sickle wrote:

> [Patient] sitting in dining room talking with another pt. Pt. upset and agitated, stating that she had been lied to about going home. Pt. states day nurse brought a paper to her to sign and told her it was for her release to go home. Pt. found out later it was a voluntary admission form. . ."

Pl. Ex. A, Pierce 0236. Van Sickle testified that plaintiff told her that she had signed a release form. When Van Sickle looked in the chart, she found the voluntary admission form. She explained to plaintiff that what she had signed was not a release form, but an agreement to stay voluntarily. Plaintiff was surprised and said that she was told it was a form they had forgotten to have signed on the night she was admitted. Van Sickle Dep. at pp.13-14. Plaintiff was "very very upset" and wanted to go home. Van Sickle explained to her that she could request to be discharged against medical advice and she would have to be released. Van Sickle also explained, however, that if plaintiff were discharged against medical advice, she would be walked out of the facility and left to find her own way home. It was late at night by then, so plaintiff decided to stay until the next day. Id. at pp.14-15.

On the morning of July 16, 2009, plaintiff told a nurse, "I get to go home tomorrow when that doctor comes in," and at 5:00 on the morning of July 17, 2009, she asked "to speak with Dr. Pang about going home." Pl. Ex. A, Pierce 0239.

Plaintiff submits the affidavit of Johnna McCrary, who worked at Resolutions during the time plaintiff was present. McCrary Aff., Pl. Ex. B [Doc. #133-2]. McCrary states that she knew that plaintiff was involuntarily committed and that a copy of the order was in plaintiff's file. She also knew that plaintiff did not want to be at Resolutions because she asked on a daily basis when she would be allowed to go home. McCrary states that at a treatment review meeting in July, there was discussion that "they had nothing in the file to justify holding her any longer." Id. at ¶15. Someone suggested asking her to sign a voluntary admission form, but that was rejected because she was unlikely to agree. "Dr. Pang then made the statement they could trick her into signing a voluntary admission form. Nothing else was said and I

-4-

thought the remark by Dr. Pang must have been a joke. Dr. Pang certified her to be detained for another week of treatment." Id. On July 21, 2009, McCrary helped plaintiff call her attorney. Plaintiff was discharged from Resolutions the following day.

Defendant Pang testified at deposition that determinations regarding patients' eligibility for discharge were made at weekly treatment team meetings. He further testified that plaintiff was not ready for discharge at the expiration of the 96 hours authorized by court order. Pang Dep. at p.21, Def. Moore Ex. F [Doc. #100-6]. He did not know why a petition for further detention was not filed. Id. at p.37.

Defendant Moore testified at deposition that she was responsible for day-to-day operations of Resolutions, which she described as ensuring adequate staffing for the unit. Moore Dep. at p.16, Def. Moore Ex. E [Doc. #100-5]. In response to questions regarding who on the staff was responsible for making sure patients are discharged at the expiration of court-ordered detention, Moore stated that, as "part of the multidisciplinary approach," patients "are discharged at the time that they are prepared and have a safe discharge." Id. at p.20. When asked whether she understood that a patient must be discharged at the expiration of a 96-hour commitment unless a further petition was filed, she answered: "You take care of the patient until they are ready to be discharged." Id. at p.21. She did not believe any staff member had been designated to inform patients of their statutory rights. Id. at p.32.

Defendants argue that it was necessary to detain plaintiff until a safe discharge plan could be made for her. They submit the affidavit of Debbie DiCarlo, a social worker with the Missouri Department of Health and Senior Services (DHSS). DiCarlo states "[i]t is standard procedure that a facility will not formally discharge a patient once a 96-hour hold has expired and a safe discharge plan is not in place." DiCarlo

Aff., Def. Pang Ex. F [Doc. #94-6].  The record reflects that the discharge coordinator at Resolutions attempted to secure a nursing home placement for plaintiff.  File notes, Def. Pang Ex. H [Doc. #94-8].  The record also reflects that plaintiff was unwilling to consent to placement in a nursing home.  DHSS Rec., Def. Moore Ex. T [Doc. #100-20].  Accordingly, Di Carlo asked Resolutions to provide documents to support a petition for guardianship.  The petition was filed on July 16, 2009, and on August 11, 2009, LeAnn Powell was appointed as temporary guardian for medical purposes.  On November 6, 2009, Ms. Powell arranged for plaintiff's admission to a nursing home.

Additional facts will be included in the discussion as necessary.

## II.   Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A. Plaintiff's Claims

Plaintiff seeks summary judgment on her claims under § 1983. To prevail, she must establish the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

##### 1. Substantive Due Process

Plaintiff claims that defendants violated her substantive due process rights by failing to discharge her at the expiration of the 96-hour order. Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (*en banc*) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)). There are two different ways of stating a substantive due process claim. Id. First, the state violates substantive due process when it infringes "fundamental" liberty interests, without narrowly tailoring that interference to serve a compelling state interest. Id. (citing Reno v. Flores, 507 U.S. 292, 301–02 (1993)). Second, the state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, [or is] offensive to human dignity. Id. (alteration in original; citation and

quotation omitted).  The parties have not adequately addressed the application of these principles to this case and thus all motions for summary judgment will be denied with respect to plaintiff's substantive due process claim.

## 2.    Procedural Due Process

Plaintiff claims that defendants violated the provisions of Chapter 632, Mo.Rev.Stat., and thus her rights to procedural due process.  To establish a procedural due process violation, plaintiff must demonstrate that she has a protected liberty interest at stake and that she was deprived of that interest without due process of law. Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999).  "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.  It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner."  Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004) (internal quotations and citations omitted).  "These essential constitutional promises may not be eroded."  Id.

"[F]or the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." Vitek v. Jones, 445 U.S. 480, 491-92 (1980) (alterations in original; internal quotations and citation omitted); see also United States v. McAllister, 225 F.3d 982, 989 (8th Cir. 2000) ("It is undisputed that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'").  Even where a patient's initial confinement is founded on a constitutionally sound basis, it cannot constitutionally continue after that basis no longer exists.  O'Connor v. Donaldson, 422

U.S. 563, 574-75 (1975). "A finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely." Id. at 575.

Defendants contend that plaintiff has no cause of action arising from the violation of Chapter 632. The Supreme Court has "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488 (1980). "A person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)).

Under Chapter 632, Mo.Rev.Stat., any adult can file an *ex parte* application for detention of another person for evaluation and treatment, supported by an affidavit that the respondent "is suffering from a mental disorder and presents a likelihood of serious harm to himself or to others." § 632.305. This is the process that resulted in plaintiff's initial detention. The period of detention under this section may not exceed 96 hours. Id. At the end of court-ordered detention, the respondent "shall be discharged unless a petition for further detention is filed." § 632.360 (emphasis added).[3]

_____

[3]Defendant Moore argues that, under Missouri rules of statutory construction, the use of the word "shall" in this statute is merely "directory" and not "mandatory" because the statute does not set forth sanctions for noncompliance. She further argues that, because Chapter 632 does not use "mandatory" language, violation of its provisions cannot give rise to liability under § 1983. She relies on Williams v. Armontrout, 852 F.2d 377, 379 (8th Cir. 1988). At issue in Williams was a prisoner's claim that his due process rights were violated when he was not returned to general population from administrative segregation. Williams conceded that there was no "independent" constitutional right to remain in general population, but argued that prison regulations created a liberty interest. The Eighth Circuit rejected his claim, finding that the regulations did not "contain particularized substantive standards . . .

-9-

In order for a respondent to be detained for any additional time, the head of the mental health facility or a mental health coordinator must file a petition for additional detention.[4]  § 632.330. While the initial detention can be based on an *ex parte* application, Chapter 632 provides an array of procedural protections for a respondent facing additional detention.  First, a court hearing must be held within two days of the filing of a petition for additional inpatient detention.  § 632.335.  And, at that hearing, respondents are entitled to be represented by an attorney, present evidence on their own behalf, cross-examine witnesses, view evidence in the court file, and have a hearing before a jury.  Id.; see also § 632.430 ("an attorney shall be appointed to represent the respondent in all judicial proceedings under this chapter").  Finally, involuntary treatment can be ordered only if the court finds, on clear and convincing evidence, that the respondent, "as the result of mental illness, presents a likelihood of serious harm to himself or to others." § 632.335.  The treatment is to be provided in the least restrictive environment and is limited to a period not to exceed twenty-one days.  Id.

Chapter 632 also designates the steps required to provide patients with meaningful notice of their rights.  For example, within three hours of a patient's admission to a mental health facility, she must be given a copy of the application for

---

that significantly guide the decisionmakers." Id.  Thus, the regulations did not create a liberty interest in remaining in general population.  As discussed above, there is an independent constitutional right not to be confined to a mental institution against one's will without procedural protections.  Defendant Moore's assertion of a distinction between "mandatory" and "directory" language is inapposite.

[4]If there is reason to believe that the respondent is incapacitated or disabled, a petition for guardianship under Chapter 475 must be filed, and a hearing on the guardianship petition must be held within two days after the termination of the 96-hour detention. Id.

initial detention and evaluation, a notice of her rights pursuant to section 632.325,[5] and be assisted in contacting an attorney, if so requested. Within four days of admission, the mental health coordinator must meet with the respondent and explain her statutory rights. § 632.320.

Chapter 632 creates a liberty interest entitling plaintiff to certain to procedural protections. Defendants argue that those protections were not triggered, however, because plaintiff has not established that she was detained against her will after the 96-hour order expired. They somewhat speciously characterize her frequent statements that she did not belong at Resolutions as "homesickness." However, it is undisputed that plaintiff did not seek discharge against medical advice once Nurse Van Sickle explained the procedure to her. Accordingly, the Court concludes that there is a dispute of material fact with respect to whether plaintiff's continued residence at Resolutions constituted "detention," subject to the protections of Chapter 632.

Defendants' additional arguments are addressed below.

### B.    Defendants' Motions for Summary Judgment

Defendants argue that plaintiff's claims amount to no more than a disagreement regarding the appropriate course of treatment or claims that they failed to exercise the proper standard of care. Thus, they argue, plaintiff is merely asserting claims for professional negligence, for which no recovery is available under 42 U.S.C. § 1983. As the discussion above demonstrates, defendants have misapprehended the claims

---

[5]Defendants cite a document entitled "Pemiscot Memorial Health Systems Patient Rights" that appears in plaintiff's medical record. Pl. Ex. A, Pierce 0501. This document does not satisfy the requirements of § 632.325.

-11-

stated in plaintiff's first amended complaint. The majority of their arguments are easily dispensed with since they are addressed to claims plaintiff has not asserted.[6]

### 1. Plaintiff's Failure to Obtain Affidavit

Defendants first assert that they are entitled to judgment under § 538.225, Mo.Rev.Stat. This provision requires a plaintiff in a medical malpractice tort action to file an affidavit from a health care provider stating that the defendant "failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition." White v. Gammon, 2:04 CV 23 JCH, 2005 WL 3079043 at *3 (E.D. Mo. Nov. 16, 2005) (quoting § 538.225). If the affidavit is not filed within 90 days of the filing of the petition, and the court does not find good cause for the failure, the claim must be dismissed without prejudice.

Defendants cite St. John's Reg. Med. Ctr., Inc. v. Windler, 847 S.W.2d 168 (Mo. Ct. App. 1993), as support for their contention that plaintiff was required to supply an affidavit under § 538.225. In that case, Windler was transported against her will to St. John's to determine whether she qualified for confinement under the mental health statutes. A physician determined that Windler was not suicidal and she was discharged. Id. at 170 n.4. Some months later, the hospital sued Windler for unpaid medical bills and she filed a counterclaim for false imprisonment. The trial court dismissed the counterclaim pursuant to § 538.225 because Windler did not file a health

---

[6]Similarly, defendants' evidence relating to plaintiff's conduct in the community before admission, the adequacy of her care while at Resolutions, and her condition when she was admitted to a nursing home in November 2009 is irrelevant to plaintiff's constitutional claim.

care affidavit. The court of appeals affirmed, finding that the affidavit was required under the circumstances presented by the case. Id. at 169. The court specifically declined to decide whether the affidavit would be required "if Windler had alleged that as a patient in the hospital she was ready for discharge but was unlawfully restrained or detained." Id. at 171 n.7. This case presents the circumstance the court declined to consider and thus St. John's does not apply.

Contrary to defendants' assertions, it is well established that § 538.225 does not apply to a plaintiff's constitutional claims under § 1983. See Moore v. Ernest-Jackson, 16 Fed. Appx. 517, 518 (8th Cir. 2001) (although prisoner's state law claim was dismissed for failure to file health care affidavit, his § 1983 claim for delay in providing medical care went to jury); Banks v. Jordon, 1:05CV0139 TCM, 2006 WL 2349625 (E.D. Mo. Aug. 11, 2006) (§ 538.225 did not apply to prisoner's claims that defendants were deliberately indifferent to serious medical needs); White, 2005 WL 3079043. See also Morrison v. St. Luke's Health Corp., 929 S.W.2d 898, 906 (Mo. Ct. App. 1996) (Windler does not apply in case brought by patient who tripped over briefcase while visiting medical office).

Defendant Pang's first motion for summary judgment and defendant Moore's motion to dismiss will be denied.

## 2. Immunity under Mo.Rev.Stat. § 632.440

Defendants assert they are immune from liability under § 632.440, because plaintiff cannot establish bad faith and gross negligence. This section states:

> No . . . registered professional nurse [or] licensed physician . . . shall be civilly liable for investigating, detaining, transporting, conditionally releasing or discharging a person pursuant to this chapter . . . at or before the end of the period for which the person was admitted or detained for evaluation or treatment so long as such duties were performed in good faith and without gross negligence.

Mo.Rev.Stat. § 632.440 (emphasis added). Plaintiff's claims arise from her continued detention after the expiration of the 96-hour detention order and, therefore, § 632.440 does not apply.

### 3. Immunity under Mo.Rev.Stat. § 537.120

Defendants similarly assert they are immune from liability under § 532.120, which states:

> No regular practicing or licensed physician or surgeon or the owner or operator of any private sanatorium or hospital shall be liable in damages for restraint of any mentally incapacitated person by reason of having in good faith furnished care, treatment or attention to such person, and while such person is under the care of such physician or surgeon or confined in such sanatorium or hospital.

Mo.Rev.Stat. § 537.120 (emphasis added). Defendants assert that, although Resolutions was physically housed within the Pemiscot Memorial Hospital, it was owned and operated by defendant Affinity Healthcare, Inc., and thus was a private sanatorium within the meaning of the statute.

Pemiscot Memorial Health Systems and Affinity entered into a service agreement on May 1, 2009. Agreement, Pl. Ex. N [Doc. #133-13]. The agreement specifies that the hospital retained the services of Affinity to assist in the operation of its existing inpatient psychiatric unit. Affinity "agreed to provide the services necessary to assist in the provision of such psychiatric services by the Hospital." Id. Section I (emphasis added). It was further agreed that the "Program is a service provided by the Hospital to its patients and ultimate control and supervision over the Program and its operations shall reside with the Hospital." Id. Section V(a) (emphasis added). Pemiscot Memorial Hospital is a county hospital and, thus, is not a private entity. Aff. of Jack B. Pennington at ¶5, Def. Pemiscot Ex. A [Doc. 98-2]. Section 537.120 does not apply in this case.

-14-

#### 4. **Failure to Disclose Expert on Causation**

Defendants argue that plaintiff is foreclosed from recovery on her claims because she failed to disclose an expert witness to testify that any damages she sustained are attributable to their conduct.  Once again, this argument is directed to negligence claims that plaintiff does not assert.

Nominal, compensatory, and punitive damages may be awarded in an action brought pursuant to 42 U.S.C. § 1983 for violation of a plaintiff's constitutional rights.  Carey v. Piphus, 435 U.S. 247 (1978).  If plaintiff establishes that defendants violated her constitutional rights, she will be entitled to recover at least nominal damages.  Compensatory damages may be available for physical injury, mental distress, humiliation, financial loss, and for the period spent in wrongful confinement.  See Kernan v. City of New York, 374 F.3d 93, 125-26 (2d Cir. 2004) ("The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty.")  Plaintiff will not require expert testimony on causation to recover damages if she establishes that defendants wrongfully confined her and deprived her of a liberty interest.

#### 5. **Punitive Damages**

Defendants argue that they are entitled to summary judgment on plaintiff's claim for punitive damages.  To be entitled to punitive damages, plaintiff must prove that defendants' conduct  was "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others."  Smith v.

<u>Wade</u>, 461 U.S. 30, 56 (1983). "It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others." <u>Schaub v. VonWald</u>, 638 F.3d 905, 923 (8th Cir. 2011). Factual disputes preclude summary judgment on this issue.

### 6. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions." <u>Rush v. Perryman</u>, 579 F.3d 908, 913 (8th Cir. 2009) (internal quotations and citations omitted). Public officials are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Domina v. Van Pelt</u>, 235 F.3d 1091, 1096 (8th Cir. 2000) (<u>quoting</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Private individuals, however, are not necessarily shielded from liability under § 1983 by the immunity afforded public officials. <u>Id.</u> (citing <u>Richardson v. McKnight</u>, 521 U.S. 399, 402-04 (1997)); <u>Jensen v. Lane County</u>, 222 F.3d 570, 576 (9th Cir. 2000) (a finding that psychiatrist at private hospital was "state actor" under § 1983 did not automatically entitle him to qualified immunity). Generally, to determine whether a private individual may rely on a qualified immunity defense, the courts look to the policy considerations supporting the doctrine of qualified immunity and to the historical availability of the defense to the group to which the individual belongs. <u>Id.</u> Courts have determined that qualified immunity is not available to health professionals employed by contract. <u>Id.</u> at 579 (contract psychiatrist not entitled to qualified immunity); <u>Harrison v. Ash</u>, 539 F.3d 510, 525 (6th Cir. 2008) (refusing to extend qualified immunity to nurses employed by CMS); <u>Hinson v. Edmond</u>, 192 F.3d

1342, 1345–47 (11th Cir. 1999) (refusing to extend qualified immunity to privately employed prison physician); Johnson v. Neiman, 4:09CV689 AGF, 2011 WL 3794255 at *10 (E.D. Mo. Aug. 25, 2011) (no qualified immunity for employees of private mental health facility that contracted with state corrections system).

Defendants argue that they are entitled to qualified immunity because they acted in "joint participation" with public officials. In support of this argument, they cite Lux by Lux v. Hansen, 886 F.2d 1064, 1066-67 (8th Cir. 1989), in which the court found that a counselor employed by a private entity was entitled to qualified immunity. The "joint participation" test is called into question by Domina, in which the Eighth Circuit adopted Richardson's focus on the "policy considerations" and "historical availability" of the defense. Defendants have made no effort to explain how this case falls outside of Richardson and Domina and thus have not established that they are entitled to qualified immunity.

Defendant Moore also argues that, because her conduct in this case was "discretionary," rather than "ministerial," it did not violate established statutory or constitutional rights of which a reasonable person would have known. This distinction between discretionary and ministerial conduct is borrowed from Missouri's doctrine of official immunity. This judicially-created doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary, but not ministerial, acts. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008) (en banc). The doctrine does not apply to plaintiff's constitutional claims. To the extent that Moore attempts to claim that she did not know that plaintiff had a right to either be released or appear in court, her subjective awareness of the law is immaterial, as "a reasonably competent public

official should know the law governing his conduct." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 819 (1982). Defendants have not established that they are entitled to qualified immunity.

## 7. Color of State Law

Defendant Moore asserts that plaintiff cannot establish that her conduct constituted action under color of state law because her salary was paid by Affinity, a private entity.

The psychiatric unit Resolutions is owned and operated Pemiscot Memorial Hospital, Defts. Resp. to Pl. Facts at ¶10 [Doc. 145], which is in turn owned and operated by Pemiscot County. Pennington Aff. at ¶5. Defendant Moore was the program director and reported to the administrator of the hospital's long term care facility. Pol. & Proc. Manual at p.22, Pl. Ex. C [Doc. #187-3]. However, she was employed by Affinity, a private entity. Benton Bloom Dep. at p.22, Def. Moore Ex. G [Doc. #100-7].

Plaintiff can establish that Moore is a state actor if she can show that Moore's employer, Affinity, acted under the authority of the State for § 1983 purposes. <u>See Rosborough v. Management & Training Corp.</u>, 350 F.3d 459, 461 (5th Cir. 2003) (employees of private prison-management corporations may be sued under § 1983). It is well established that a private entity which contracts with the state to perform a "traditional state function" such as providing medical services to prison inmates may be sued under § 1983 as one acting "under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 54 (1988). Similarly, a nominally private entity is properly treated as a state actor when it is controlled by an "agency of the State," <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 296 (2001) (<u>citing Pennsylvania v. Board</u>

of Directors of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957)), or when the public entity is "entwined" in the management and control of the nominally private entity.  Id. at 302 ("Entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards.")  Moore has not addressed the relationship between Affinity and Pemiscot County and thus is not entitled to summary judgment on this basis.

### 8.    Plaintiff's State Law Claims

Defendant Moore moves for summary judgment on plaintiff's state law claims for false imprisonment, assault and battery in the form of forced medication, and intentional infliction of emotional distress.

Under Missouri law, a false imprisonment occurs when there is confinement without legal justification by the wrongdoer of the person wronged.  Desai v. SSM Health Care, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993) (citations omitted).  The elements of false imprisonment are the detention or restraint of the plaintiff against her will, and the unlawfulness of the detention or restraint.  Liability attaches where it is shown that defendants instigated, caused or procured the arrest or detention.  Id. Defendant Moore incorrectly asserts that plaintiff cannot establish that her detention was "unlawful" because Chapter 632 is "directory" rather than "mandatory."  Her motion for summary judgment will be denied with respect to plaintiff's false imprisonment claim.

To recover damages for battery, a plaintiff must plead and prove an "intended, offensive bodily contact with another person."  Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 334 (Mo. 2011) (en banc).  Within the context of medical examinations, "a battery occurs when a physician performs a medical procedure

without valid consent." <u>Cruzan by Cruzan v. Harmon</u>, 760 S.W.2d 408, 417 (Mo. 1988) (*en banc*). To establish battery based on lack of consent, "a plaintiff is only required to prove the occurrence of unconsented touching." <u>DeVitre</u>, 349 F.3d at 334. Therefore, plaintiff must plead and prove that she did not give consent or that she withdrew consent. <u>Id.</u> Assault is "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." <u>Id.</u> at 335. To establish an assault, a plaintiff must prove: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." <u>Id.</u> (citation omitted). Defendant Moore argues that plaintiff cannot establish either claim because there is no evidence that Moore ever touched plaintiff or put her in fear of such touching. However, a defendant can be liable for battery or assault committed at her instruction. <u>See</u> <u>Mansfield v. Smithie</u>, 615 S.W.2d 649, 653 (Mo. Ct. App. 1981) (bar owner liable for assault of patron committed by bouncer). Defendant Moore's motion for summary judgment on this claim will be denied.

In order to establish the tort of intentional infliction of emotional distress, plaintiff must prove (1) the defendant's conduct was outrageous or extreme; (2) the defendant acted intentionally or recklessly; (3)plaintiff suffered extreme emotional distress that resulted in bodily harm; (4) that was caused by the defendant's conduct; and (5) the conduct was intended solely to cause extreme emotional distress to the victim. <u>Crow v. Crawford & Co</u>., 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). Nothing in the record suggests that Moore intended to cause plaintiff extreme emotional distress and summary judgment will be granted on this claim.

### C. Defendants' Motions to Strike

Defendants move to strike plaintiff's statements of facts and certain statements in her memoranda for failure to comply with Local Rule 4.01. Plaintiff submitted corrected documents and the motions to strike are moot.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment [Doc. #132] is **denied**.

**IT IS FURTHER ORDERED** that the first motion of defendant Pang for summary judgment [Doc. #92] is **denied**.

**IT IS FURTHER ORDERED** that the second motion of defendant Pang for summary judgment [Doc. #94] is **denied**.

**IT IS FURTHER ORDERED** that the motion of defendant Moore to dismiss for failure to file health care affidavit [Doc. #120] is **denied**.

**IT IS FURTHER ORDERED** that the motion of defendant Moore for summary judgment [Doc. #99] is **granted** with respect to plaintiff's claim for intentional infliction of emotional distress **only**, and **denied** in all other respects.

**IT IS FURTHER ORDERED** that defendants' motions to strike [Docs. ## 137 and 182] are **denied as moot**.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of June, 2014.