UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

RUTH PIERCE, )
)
    Plaintiff, )
)
vs. ) Case No. 1:11-CV-132 (CEJ)
)
BONNIE MOORE and DR. JAMES PANG, )
)
    Defendants. )

### MEMORANDUM AND ORDER

This matter is before the Court on the motions of defendants Bonnie Moore and Dr. James Pang for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay of proceedings pending appeal. Plaintiff has filed a response in opposition.

    **I.**    **Background**

Plaintiff Ruth Pierce brings this action pursuant to 42 U.S.C. § 1983, asserting claims that defendants Pang and Moore improperly detained her in an inpatient psychiatric unit following the expiration of a 96-hour detention order. She alleges that her continued detention violated her due process rights under the United States and Missouri Constitutions and violated the provisions of Chapter 632, Mo.Rev.Stat., governing involuntary commitment procedures. She also asserts state law claims for false imprisonment, assault and battery in the form of forced medication, and intentional infliction of emotional distress.[1]

---

[1] The Court granted summary judgment in favor of defendant Moore on plaintiff's claim of intentional infliction of emotional distress.

On June 13, 2014, the Court denied defendants' motions for summary judgment and to dismiss. On August 8, 2014, the defendants filed the instant motions to certify for interlocutory appeal.

II. **Legal Standard**

28 U.S.C. § 1292(b) provides a mechanism through which a party can pursue an interlocutory appeal.[2] It has "long been the policy of the courts to discourage piecemeal appeals." White v. Nix, 43 F.3d 374, 376 (8th Cir.1994) (internal quotations omitted). Motions to certify issues for interlocutory appeal should be "granted sparingly and with discrimination." Id. Therefore, § 1292(b) motions should be granted only in "exceptional cases where a decision on appeal may avoid protracted and expensive litigation." Id. The movant bears the "heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." Id. at 377.

Section 1292(b) establishes three criteria for certification: the district court must be "of the opinion that" (1) the order "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) certification will

---

[2]Section 1292(b) provides in pertinent part:

(b) When a district judge, in making in a civil action an order not otherwise appealable . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order.

"materially advance the ultimate termination of the litigation." Id. at 377 (quoting Paschall v. Kansas City Star Co., 605 F.2d 403, 406 (8th Cir. 1979)).

   III. Discussion

   A. Failure to Obtain a Health Care Affidavit Under § 538.225

Defendants assert that the Court should certify for appeal its denial of their motions to dismiss because plaintiff did not obtain a healthcare affidavit under § 538.225, Mo.Rev.Stat.

Defendants first assert that the Court misinterpreted St. John's Reg.Med. Ctr., Inc. v. Windler, 847 S.W.2d 168 (Mo. Ct. App. 1993), a case on which they relied to support their assertion that plaintiff was required to comply with § 583.225. Defendants disagree with the Court's determination that this case falls within an exception noted by the Windler court. The Windler case did not address the application of § 538.225 to constitutional claims and therefore is immaterial to the disposition of the issues in this case and the Court thus declines to readdress the Windler decision.

Defendants concede that a plaintiff is not required to file a healthcare affidavit to bring "a true § 1983 claim." However, they assert that plaintiff's claims amount to no more than a difference of opinion over proper medical care and thus an affidavit is required. In support of this contention, they cite Thomas v. Miller, --- S.W.3d ---, 2014 WL 2723904 (Mo. Ct. App. June 17, 2014). The plaintiff in Thomas asserted a battery claim against her surgeon for failing to obtain proper informed consent. There was evidence in the record that the surgeon had asked for and obtained consent while Thomas was under the influence of sedative medication. Id. at *4. Based on this evidence, the court concluded that "the true nature" of plaintiff's claim involved the manner of her consent and whether the surgeon deviated from the standard of care

- 3 -

in obtaining her consent. Under these circumstances, the court held, the plaintiff was required to obtain a healthcare affidavit before proceeding. Id. at *5. The Court rejects defendants' suggestion that Thomas permits courts to recast constitutional claims into medical malpractice claims. In this case, the "true nature" of plaintiff's claims is that she was improperly confined in violation of her constitutionally protected rights.

As the Court previously stated, § 538.225 does not apply to a plaintiff's constitutional claims under § 1983. See Schmidt v. Kemper, 05-4401-CVC-NKL, 2007 WL 1028927, at *2 (W.D. Mo. Mar. 29, 2007) (plaintiff not required to comply with § 538.225 in order to bring an action pursuant to 28 U.S.C. § 1983); Banks v. Jordon, 1:05CV0139 TCM, 2006 WL 2349625, at *1 (E.D. Mo. Aug. 11, 2006) (§ 538.225 does not apply to detainee's claim that constitutional rights were violated by nurses' deliberate indifference to serious medical needs); White v. Gammon, 2:04 CV 23 JCH, 2005 WL 3079043, at *3 (E.D. Mo. Nov. 16, 2005) (denying motion to dismiss inmate's § 1983 claims because § 538.225 " applies only to medical malpractice tort actions," not § 1983 claims). None of the cases cited by defendants involved § 1983 claims. See Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 335 (Mo. 2011) (*en banc*) (plaintiff bringing suit against physician conducting independent medical examination failed to plead all elements of assault or medical battery and thus his claims sounded in medical malpractice); State *ex rel.* Farley v. Jamison, 346 S.W.3d 397, 400 (Mo. Ct. App. 2011) (trial court erred in failing to dismiss medical malpractice action under § 538.225 where healthcare affidavit did not contain all statutorily required elements); State *ex rel.* Red Cross Pharmacy, Inc. v. Harman, 423 S.W.3d 258, 267 (Mo. Ct. App. 2013) (healthcare affidavit required where plaintiff claimed

pharmacy negligently performed duties imposed by virtue of its status as a licensed, professional health-care provider); Grace v. Harris, 4:06-CV-1510 (CEJ), 2007 WL 3530200 (E.D. Mo. Nov. 13, 2007) (dismissing inmate's state law claims of professional negligence brought against medical providers).

Defendants have failed to establish that there is substantial ground for difference of opinion about a controlling question of law on this point.

### B. Denial of Qualified Immunity

Defendants Pang and Moore are private individuals employed at a public hospital.[3] Generally, to determine whether private individuals are entitled to qualified immunity, the courts look to the policy considerations supporting the doctrine of qualified immunity and to the historical availability of the defense to the group to which the individual belongs. Jensen v. Lane County, 222 F.3d 570, 576 (9th Cir. 2000); see also Filarsky v. Delia, 132 S. Ct. 1657, 1665 (2012) (common-law principles of immunity are not abrogated absent clear legislative intent to do so). The court examines whether: (1) there was a firmly rooted history of immunity for similarly situated parties at common law; and (2) whether granting immunity would be consistent with the history and purpose of § 1983. McCullum v. Tepe, 693 F.3d 696, 700 (6th Cir. 2012).

With respect to the first element, defendants argue that Missouri common law has long recognized immunity for health care providers. In support, they cite § 632.440, Mo.Rev.Stat., which affords immunity to health care officials performing

---

[3]While public officials do not require certification to appeal the denial of a claim of qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), the interlocutory appeal doctrine does not apply to private individuals. Chicago & N. W. Transp. Co. v. Ulery, 787 F.2d 1239, 1240-41 (8th Cir. 1986).

certain functions under Chapter 632. However, "[t]he inquiry begins with the common law as it existed when Congress passed § 1983 in 1871." Filarsky v. Delia, 132 S. Ct. 1657, 1662 (2012). Thus, Missouri's statute, enacted in 1980, is not a proper starting point for this analysis. See McCullum, 693 F.3d at 701 (after Filarsky, cases that relied on 20th century law are "suspect, at best").

Defendants have not addressed whether there were common-law immunities available for private physicians and nurses providing psychiatric services for a public institution in 1871. The Sixth Circuit undertook the relevant inquiry, however, and determined that there was no such common-law tradition of immunity. Id. at 702-04 (examining cases from 1794, 1832, 1891, and 1898). Defendants provide no persuasive argument to the contrary; indeed, they have made no effort to conduct the relevant inquiry and the Court determines that they have not established that a relevant immunity existed at common law.

With respect to the second element of the analysis, the Supreme Court has stated that the purpose of the qualified immunity doctrine is to protect "government's ability to perform its traditional functions" by providing immunity where "necessary to preserve" the ability of government officials "to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service." Richardson v. McKnight, 521 U.S. 399, 407-08 (1997) (quoting Wyatt v. Cole, 504 U.S. 158, 167 (1992)). Stated another way, qualified immunity

> protect[s] the public from unwarranted timidity on the part of public officials by, for example, "encouraging the vigorous exercise of official authority," by contributing to "'principled and fearless decision-making,'" and by responding to the concern that threatened liability would . . . "'dampen the ardour of all but the most resolute, or the most irresponsible,'" public officials.

Id. at 408 (citations omitted).

In Richardson, the Supreme Court addressed whether guards employed by a private company to work in a state correctional facility were entitled to qualified immunity. Based on a review of the history and purposes for qualified immunity, the court determined that there was

> nothing special enough about the job or about its organizational structure that would warrant providing these private prison guards with a governmental immunity. The job is one that private industry might, or might not, perform; and which history shows private firms did sometimes perform without relevant immunities. The organizational structure is one subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide – pressures not necessarily present in government departments.

Id. at 412.

In this case, defendants have not addressed how extending them the protection of qualified immunity protects the government's ability to perform its traditional functions. Instead, they argue that they acted in "joint participation" with the government and are entitled to immunity under Filarsky:

> Sometimes, . . . private individuals will work in close coordination with public employees, and face threatened legal action for the same conduct. . . . Because government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag – facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity. Under such circumstances, any private individual with a choice might think twice before accepting a government assignment.

Filarsky, 132 S. Ct. at 1666. In Filarsky, the City of Rialto initiated an internal affairs investigation of a firefighter who claimed to be too ill to work. Filarsky, a private attorney, was hired by the city to conduct an administrative investigation interview. When Filarsky ordered the firefighter to produce evidence to support his claim that he was ill, the firefighter filed suit under § 1983. The Supreme Court determined that Filarsky was entitled to qualified immunity. The court noted that qualified immunity

was available for public employees performing investigative activities. Id. at 1662. First, Filarsky was retained to perform a function for which immunity existed at common law. Id. at 1663-64 (noting immunity for private individuals serving as public prosecutors, justices of the peace, special policeman, or members of a *posse comitatus*). Affording immunity to Filarsky also served to ensure "that talented candidates are not deterred by the threat of damages suits from entering public service." Id. (quoting Richardson, 521 U.S. at 408) (internal quotations and alterations omitted). The City of Rialto had no permanent employee with Filarsky's expertise in conducting internal affairs investigations and, without the protection of immunity for providing an essential government function, it is likely that private individuals would decline public engagements. Id. at 1666.

Defendants here are more akin to the prison guards in Richardson than the internal investigator in Filarsky. Defendants note that the county hospital had ultimate control and supervision over the psychiatric unit. That assertion, without more, does not establish that defendants worked in joint participation with state actors and there is no evidence in the record that defendants consulted with hospital administrators in making decisions regarding plaintiff's care. Defendants do not argue that they were performing an essential government function or that affording them qualified immunity is consistent with or serves the purposes served by immunities that were available at common law in 1871. The Court finds that defendants have failed to establish that there is substantial ground for difference of opinion about a controlling question of law on this point.

### C. Missouri Statutory Immunity

Section 537.120 provides:

> No regular practicing or licensed physician or surgeon or the owner or operator of any <u>private sanatorium or hospital</u> shall be liable in damages for restraint of any mentally incapacitated person by reason of having in good faith furnished care, treatment or attention to such person, and while such person is under the care of such physician or surgeon or confined in such sanatorium or hospital.

Mo. Rev. Stat. § 537.120.

The Court found that defendants had not established that they were entitled to immunity under this statute because a public entity, Pemiscot Memorial Health Systems, retained ultimate control of the psychiatric unit in which plaintiff was detained.

> Section 632.440 provides:
>
> No . . . registered professional nurse [or] licensed physician . . . shall be civilly liable for investigating, detaining, transporting, conditionally releasing or discharging a person pursuant to this chapter . . . at or <u>before the end of the period</u> for which the person was admitted or detained for evaluation or treatment so long as such duties were performed in good faith and without gross negligence.

Mo.Rev.Stat. § 632.440 (emphasis added).

The Court found that this section did not apply in this case because plaintiff alleges that she was detained <u>after</u> the expiration of the 96-hour hold. Defendants argue that the Court incorrectly interpreted these statutes and that they should be permitted to take an immediate appeal. The request will be denied. Immunity under § 1983 is governed by federal law and state law cannot provide immunity from suit for federal civil rights violations. <u>Wallis v. Spencer</u>, 202 F.3d 1126, 1144 (9th Cir. 2000). "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the

Constitution insures that the proper construction may be enforced." Martinez v. California, 444 U.S. 277, 284 n.8 (1980) (citations omitted). An interlocutory appeal on defendants' potential immunity from plaintiff's state-law claims will not materially advance the ultimate termination of the litigation.

* * * * *

In conclusion, the Court finds that defendants have failed to establish that the order denying summary judgment involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the defendants' motions for certification of interlocutory appeal [Docs. #197 and #199] are **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2014.